## Court of Appeals.

March 3, 1896.

## PEOPLE v. CAROLINE KRAFT.

1. CRIMINAL LAW—DYING DECLARATIONS.

Whether the conditions and circumstances, under which an ante mortem statement was made, constitute a sufficient foundation for its reception in evidence, is a question which the trial judge must determine.

2. SAME—REVIEW.

His determination is subject to review at the general term, and the review of such question upon the disputed facts ends at the general term.

3. SAME—INSTRUCTION.

A charge that a dying declaration "is given all the sanction of the evidence which the law can give to evidence," is erroneous.

4. SAME—DYING DECLARATIONS.

Such declaration is not of the same value and weight as the evidence of a witness given in a court of justice, under all the tests and safeguards which are there afforded for discovering the truth, where the accused has the opportunity of more fully investigating the truth of the evidence by means of cross-examination, and the jury have the opportunity of observing the demeanor of the person whose testimony is relied upon.

Appeal from a judgment of the general term, which reversed the judgment of conviction of defendant for manslaughter on the ground of errors of law.

John D. Lindsay, Asst. Dist. Atty., for the People.

William F. Howe, for respondent.

GRAY, J.—The defendant was convicted under an indictment charging her with the crime of manslaughter in the first degree, for having caused the death of Bertha Kern through the use of instruments, with intent to procure a miscarriage, not necessary to preserve her life. Upon appeal the general term reversed the judgment of conviction for errors of law, and not for errors of fact, and ordered a new trial. The deceased made an ante mortem statement to the coroner while at the hospital, to which she had been removed, and an objection was made by defendant to its admission, based, among other grounds stated, npon the insufficiency of the evidence to prove it to have been a dying declaration. This kind of evidence is an exception to the rule which excludes derivative or seeondhand evidence. It has been termed an anomaly, and its admission is justified upon the ground of necessity. Whether the conditions and circumstances under which an ante mortem statement was made constitute a sufficient foundation for its reception in evidence is a question which the trial judge must determine. That is an issue with which the jury have nothing to do, and the court, upon the facts addressed to it, must try and decide it. In the present case, all the facts connected with the making of this statement by the deceased were laid before the recorder, and he determined to admit it. His determination was subject to review at the general term, and, as it would appear from a memorandum filed at the general term, two of the learned justices there did not concur with Mr. Justice Follett, who spoke for the court, in so far as he held that the dying declaration was admissible under the proofs. But the review of this question upon the disputed facts ended at the general term, and, as the reversal of the judgment of conviction was for errors of law only, we shall not consider the question.

The recorder, in charging the jury that the dying declaration was competent testimony for them to consider, added: "It is your duty to take it into consideration, because it is evidence for you, and it is given all the sanction of evidence which the law can give to evidence." To this portion of the charge an exception was taken, and it presents the only question of any importance for us to consider. It was the ground for reversal which was assigned in the opinion at the general term. The instruction con-

veyed to the jury in this portion of the charge was distinctly erroneous, and there was nothing to qualify its extraordinary force as a comment upon that species of evidence. Dying declarations, as it was previously observed, constitute an exception to the general rule. They are of the nature of hearsay, or secondhand, evidence, and although for reasons of public policy, as well as because of the difficulty of getting better proof of the fact, they are deemed to be admissible, it never has been, and is not to be, supposed that they have all the guaranties which surround evidence given under oath in a court of justice. Judge Andrews, in People v. Smith, 104 N. Y., at page 501; 10 N. E. 873, as Judge Coleridge suggested in Rex v. Spilsbury, 7 Car. & P., at page 190, spoke of the admission of such proof as being anomalous, and as requiring clear evidence of the facts to justify it. It is, of course, true that such declarations are considered to be equal to an oath taken in a court of justice; but that is because of the circumstances surrounding them when made. It is assumed that, being made in extremity, when the party is at the point of death, and believes that all hope in this world is gone, they have some guaranty for their truth, in view of the solemnity of the occasion, or as much as an oath in court would have. But it is clear that their value as evidence rests upon an assumption, and hence it is that, while the law recognizes the necessity of admitting such proof on a par with an oath in a court of justice, it does not and cannot regard it as of the same value and weight as the evidence of a witness given in a court of justice, under all the tests and safeguards which are there afforded for discovering the truth, the object of judicial inquiry; for there the accused has the opportunity of more fully investigating the truth of the evidence by means of cross-examination, and the jury have the opportunity of observing the demeanor of the persons whose testimony is relied upon. See 2 Russ. Crimes, p. 767, and 2 Best, Ev. p. 637, and authorities cited. The power of cross-examination is quite as essential, in the process of eliciting the truth, as the obligation of an oath; and where the life or the liberty of the defendant is at stake the absence of the opportunity for cross-examination is a serious deprivation; which differentiates in nature and in degree the evidence of a dying declaration from that which is di-

rect and given upon the witness stand.    Where, as in the present case, the evidence to convict the defendant is contained in an ante mortem statement of the deceased, while it is entitled to be considered as having the weight of an oath, it would be wrong to say that it had all the weight which law can give to evidence. Yet that is what, in effect, the recorder instructed the jury here, when he told them that the dying declarations are "given all the sanction of evidence which the law can give to evidence." Speaking in a strict sense, the sanction of an oath and the sanction of such declarations are deemed to be the same, when the state of mind of the person is considered; but, as it was said by Baron Alderson, in Ashton's Case, 2 Lewin, Crown Cas. 147, "though the sanction is the same, the opportunity of investigating the truth is very different, and therefore the accused is entitled to every allowance and benefit that he may have lost by the absence of the opportunity for more full investigation by the means of cross-examination." This defendant denied having practiced an abortion, and testified as to statements by the deceased, and as to facts which, if the jury had believed her, would have resulted in her acquittal. It was, therefore, of the utmost importance that the jury should not receive the incorrect impression that, however admissible in evidence the dying statement, it was as valuable, or as authoritative, for the purpose of proving the defendant's guilt, as though the inculpatory evidence had been given by a witness in a court of justice, and with every opportunity to the defendant to investigate its truth by means of cross-examination. The district attorney discusses the significance of the word "sanction," used by the recorder, and argues that it is not to be read as meaning "weight." But we must read the language of the charge in the sense in which it is ordinarily used and understood by plain men, and, when so read, "sanction" would convey the idea of sacredness, or of authority, and, in the connection in which used in the charge, that of weight. The general term justices interpreted to themselves, and why should not the jurors? In my opinion, so would the casual hearer. The learned recorder himself must have intended to attach to the evidence of a dying declaration an important equivalent to the highest which the law could attach to evidence, or he would not have

said so broadly that it was "given all the sanction of evidence which the law can give to evidence." We think the jury incorrectly instructed as to the relative character and weight of such evidence, and it is impossible to say that thereby the defendant's substantial rights may not have been prejudiced. The order appealed from should be affirmed.

All concur.

Order affirmed.

## DYING DECLARATIONS.

### (See note in People v. Kraft, 11 N. Y. Cr. 39.)

It is proper to instruct the jury that they should reject certain statements, though admitted as dying declarations, if they found that deceased had any hope of recovery at the time they were made. Commonwealth v. Brewer, (Mass.), 42 N. E. 92.

Belief of deceased that he was about to die was held to be sufficiently established to admit his statements as to the cause of the shooting as dying declarations. Commonwealth v. Brewer (Mass.), 42 N. E. 92; State v. Jones (La.), 18 So. 515; Polk v. State (Tex. Cr. App.), 34 S. W. 633; Sims v. People (Tex. Cr. App.), 36 S. W. 256; State v. Gay (Mont.), 44 P. 411; People v. Weaver (Mich.), 66 N. W. 567.

A complete foundation is laid for the introduction of dying declarations in evidence by proof that the attending physician told deceased that his wounds were dangerous, that deceased stated that he was going to die, that at the time of making his statement his extremities were cold, and that shortly afterwards he died. State v. Smith (La.), 19 So. 452.

Dying declarations of wife that her husband repeatedly threatened to shoot her if she should leave him and refuse to cohabit with him, in connection with testimony that she did leave him, and that, he, being unable to induce her to return, shoot her, are admissible. People v. Beverly (Mich.), 66 N. W. 379.

Fact that deceased was under the influence of opiates at the time the dying declarations were made, does not furnish sufficient ground for the reversal of the action of the court in admitting them, where her condition, both as to the influence of opiates and her belief in impending death, was before the court and jury. People v. Beverly, (Mich.), 66 N. W. 379.

The provision of the statute requiring the names of witnesses to be indorsed on the information does not embrace a dying declaration. People v. Beverly, (Mich.), 66 N. W. 379.

Dying declarations are not rendered inadmissible for the reason that the exigencies of the case do not require it, that they were taken immediately after the injury, or that defendant had no notice of the taking of the statement. People v. Beverly, (Mich.), 66 N. W. 379.

Nor merely in the fact that deceased did not die until five days after the statement was made. Moore v. State (Tenn.), 33 S. W. 1046.