(120 App. Div. 769)

PEOPLE v. BRECHT.

(Supreme Court, Appellate Division, First Department. July 15, 1907.)

1. HOMICIDE—EVIDENCE—DYING DECLARATIONS—GROUNDS OF ADMISSIBILITY.
   To render dying declarations competent as evidence, it must appear that the person making them did so under a belief of impending death and while entertaining no hope of recovery.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 26, Homicide, §§ 430–437.]

2. SAME.
   The victim of a criminal operation for abortion, when taken to a hospital for an operation, was not apprised by the physicians of her dangerous condition and the likelihood of her soon dying, but was able to walk from the bed to a table, where she was examined, and the only facts tending to show that she knew she was dangerously ill was the fact that she was bleeding from her genital organs, and that physicians had been called, and she had been hurried to a hospital. In answer to categorical questions by the coroner, she stated that she believed she was about to die, and that she hoped God would let her recover. *Held*, not sufficient to establish a belief of impending death and abandonment of hope of recovery necessary for the reception of her statement as a dying declaration.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 26, Homicide, §§ 430–437.]

3. SAME — DETERMINATION OF QUESTION OF ADMISSIBILITY — QUESTION FOR COURT.
   It is for the court to determine whether a proper foundation has been laid for the reception of dying declarations.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 26, Homicide, §§ 457–459.]

4. WITNESSES—CONFIDENTIAL COMMUNICATIONS—PHYSICIAN AND PATIENT.
   Code Civ. Proc. § 834, prohibiting the disclosure by a physician of information obtained by him while attending a patient in his professional capacity, does not apply to a criminal prosecution for the death of the patient.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, § 768.]

Appeal from Court of General Sessions, New York County.

Lena Brecht was convicted of manslaughter in the first degree, and appeals. Reversed, and new trial granted.

Argued before PATTERSON, P. J., and LAUGHLIN, McLAUGHLIN, HOUGHTON, and LAMBERT, JJ.

Edward Hymes, for appellant.
Robert S. Johnstone, for respondent.

HOUGHTON, J. The defendant was indicted and convicted of the crime of manslaughter in the first degree, in having caused the death of one Pauline Schaefer through performing a criminal operation upon her. There is no direct evidence that the defendant performed or aided in the criminal operation. For that fact the people were com-

pelled to rely upon the alleged dying declarations of the victim. The extrinsic facts proved by unchallenged evidence were that two doctors were summoned to defendant's house to treat a woman whom they found suffering from a punctured womb, and whom they directed to be taken to a hospital for operation, and that defendant paid their fee for the visit, and that in the street window of the defendant's apartment was a sign reading "Mrs. Brecht." In addition, it was shown that, when the officer came to arrest the defendant, he asked her where the girl Pauline Mathias was, and defendant said she knew nothing about her. There had been a mistake at police headquarters in the name, and it had been recorded as "Mathias," instead of Schaefer, or Traulsen, by which she was also known, and defendant's denial is of slight probative force in view of such fact, as is also her statement to the coroner that she knew of no woman who desired to make a dying declaration. That the deceased was pregnant, and that a criminal operation had been performed upon her, and that she died from its resulting effects were not controverted by any affirmative evidence on the part of defendant, and we assume in our consideration of the case that such were the facts.

The appellant insists that the facts proven were insufficient to permit the declarations of the deceased to be introduced in evidence as dying declarations to show defendant's participation in the criminal abortion. We think such contention correct, and that the declarations were improperly admitted. The statements of the deceased concerning her belief as to her immediate death and abandonment of hope of recovering were elicited by the coroner by categorical questions put to her. The questions and answers are as follows:

"Q. Do you now believe that you are about to die? A. Yes. Q. Have you any hope of recovery from the effect of the injury which you have received? A. I hope God will let me recover."

These answers to these questions, with the accompanying declaration that the defendant had assisted in performing the criminal operation upon the decedent, were obtained from the decedent at about 10 a. m. on May 14th, and the operation at the hospital performed in the hope of saving her life took place about 3 o'clock p. m. of that day, and she died about three hours thereafter. Soon after her removal to the hospital on the evening before, the coroner had endeavored to obtain the declarations, but found her in too weak physical condition. He testifies that when he took her statement he believed her to be in a dying condition, but did not tell her so; nor is there any proof that any physician or other person apprised her of the dangerous condition she was in and the likelihood of her soon dying. Before she was removed to the hospital, and while the doctors were examining her at the defendant's home, she walked with support from the bed to a table for better examination, and rode in a carriage to the hospital, with whom does not appear. The case is barren of any facts tending to show that the deceased knew she was dangerously ill, except from the fact that she was bleeding from her genital organs, and that physicians were called, and she was hurried to a hospital. Even the fact that she knew an operation was to be performed upon her in the afternoon does not

appear. In the light of this lack of knowledge and understanding on her part, the answers to the questions propounded to her by the coroner do not have the force they otherwise would. The trial court admitted the declarations after some hesitation, finally interpreting the expression of hope that God would let her recover in the nature of a wish or prayer that she might be permitted to do so, but with no hope that such wish would be granted.

There is no dispute between counsel as to the rule respecting the admission of dying declarations, and both concede that, in order to make them competent as evidence, it must appear that the person making them does so under a belief of impending death, and when entertaining no hope of recovery, and such is the law. People v. Smith, 104 N. Y. 491, 10 N. E. 873, 58 Am. Rep. 537. Before such declarations can be admitted in evidence, both conditions of mind must be established. Belief in impending death alone is insufficient. Abandonment of hope of recovery must also be shown. People v. Chase, 79 Hun, 296, 29 N. Y. Supp. 376, affirmed 143 N. Y. 669, 39 N. E. 21. Assuming the decedent's answer to the first question shows, notwithstanding her lack of information as to her precarious condition, that she believed she was about to die, her answer to the second question comes far short of showing that she was without hope of recovery. Taken literally, it shows that she did entertain a hope of recovery. If she had been informed by some physician in whom she believed that she must die, and that her condition was hopeless, probably her answer might be taken in the nature of a prayer to be spared from what she knew and believed to be inevitable. In the light of the facts appearing, however, we do not think such an interpretation is permissible. Dying declarations are admitted from necessity, for lack of better proof. Their reception as evidence is an exception to the general rule, and the facts showing their competency should not be ambiguous or uncertain. People v. Kraft, 148 N. Y. 631, 43 N. E. 80.

In the cases of Brotherton v. People, 75 N. Y. 139, and of People v. Conklin, 175 N. Y. 333, 67 N. E. 624, and of People v. Chase, supra, and of People v. Burt, 51 App. Div. 106, 64 N. Y. Supp. 417, affirmed 170 N. Y. 560, 62 N. E. 1099, upon which respondent relies, there were elements lacking in the present case, which showed that the decedents had been told they must die, and so believed and had abandoned hope of recovery, or made use of such involuntary expressions as showed their belief in both. In the Brotherton Case, the decedent repeatedly stated that he would not recover, and his physician had told him he must die. The decedent in the Conklin Case was practically dying when the declarations were made, and the fact that she so stated, and asked that a priest be sent for to administer the last rites to her, in view of her religious belief, was deemed sufficient to show belief of impending death and abandonment of hope, and could not well be interpreted otherwise. In the Chase Case, the statement was: "I believe I am going to die. I would like to live to show you what a good girl I could be, but I won't have the chance"—or "know I can't live." And in the Burt Case, the decedent was informed he must die of his wounds, and declared he knew it to be so.

The above cases illustrate that no set words or phrases are necessary to establish a belief of impending death and abandonment of hope of recovery, and that each case must depend upon its own peculiar facts. Whatever the facts proven are, however, they must fairly show that both conditions of mind existed before the dying declarations can be admitted in evidence. People v. Evans, 40 Hun, 1, is more nearly like the present than any authority called to our attention. In that case, the decedent said he believed he was about to die, and to the inquiry as to whether he had any hope of recovery, he replied: "It is hard for me to say." It was held that the element of abandonment of hope of recovery was lacking, and that the declarations were improperly received. We are of opinion that such was the situation in the present case. The error was not cured by leaving to the jury the question as to what the decedent meant by her expression that she hoped God would let her recover. It was for the court to determine whether proper foundation had been laid for reception of the declarations, and not for the jury.

The defendant also urges that it was error to permit Dr. Roth to testify to what he learned as to the physical condition and ailment of the decedent on his examination of her when he ordered her removal to the hospital, because it was a disclosure by him of what he learned while attending a patient in his professional capacity. It is generally understood by the courts that the prohibition of section 834 of the Code of Civil Procedure does not apply to a criminal prosecution for causing the death of the patient, and such is the purport of the decisions in Pierson v. People, 79 N. Y. 424, 35 Am. Rep. 524, and People v. Harris, 136 N. Y. 423, 448, 33 N. E. 65. The only doubt that such is the law is raised by the fact that the Legislature, by chapter 331, p. 606, of the Laws of 1905, amended that section by providing that it should not apply where the patient was a child under the age of 16 years, and the information acquired by the physician indicated that such patient had been the victim of a crime. It is argued that the enactment of this exception indicates that the Legislature understood that in all other cases no disclosure was permissible. In People v. Murphy, 101 N. Y. 126, 4 N. E. 326, 54 Am. Rep. 661, it was held that the prohibition of the section did apply to a criminal prosecution for producing an abortion where the patient was living. All of the above decisions respecting the application of the section had been made when the Legislature enacted the amendment of 1905, and it can be given full force by interpreting it to apply to a living patient under 16 years of age upon whom a crime had been committed. Under the decisions of the court, the section did not apply to a dead patient, whose death was the subject of a criminal prosecution; but it did apply to any living patient upon whom a crime was charged to have been committed. By the amendment, it does not apply to a patient under 16 years of age upon whom a crime is committed, whether dead or alive. Our conclusion is that the prohibition of the section does not apply to a criminal prosecution for the death of the patient, and that it was proper to permit the physician to testify to the facts which he learned on his examination of the decedent.

Other errors are alleged to have been committed upon the trial; but it is unnecessary to discuss them, in view of the fact that we conclude a new trial must be had because of the error in admitting the alleged dying declarations.

The judgment of conviction must be reversed, and a new trial granted. All concur.

