ANTHONY DICKASON *v.* THE STATE.

(*Jackson.* April Term, 1918.)

1. **HOMICIDE. Dying declarations. Admissibility.**

The victim of the murder was shot at close quarters with a shot-gun, and his wounds were very large and of a desperate nature. He received the wound late in the evening and lived until the following day. The physicians who visited him the following morning informed him that he would have a bare chance for recovery if he submitted to an operation. He protested against the operation; said it was no use; that he was going to die. After some further talk he ceased objecting to the operation and made the statement admitted in evidence. He never at any time manifested any hope, and while the anæsthetic was being administered again protested; said it was useless, and he was going to die. *Held,* the declaration was admissible, since the victim regarded his death as inevitable and imminent at the time he made the declaration, and was without hope of recovery, the bare circumstance that he consented to an operation not indicating that he entertained hope of recovery. (*Post,* p. 603.)

Cases cited and approved:   Smith v. State, 28 Tenn., 9;   Anthony v. State, 19 Tenn., 265;   Baxter v. State, 83 Tenn., 657.

2. **HOMICIDE. Dying declarations. Sense of impending death. How shown.**

The sense of impending death may be shown by the language of deceased, or inferred from the character of the wound, or set up by the testimony of physicians or other attendants. (*Post,* p. 605.)

Cases cited and approved:   Brakefield v. State, 33 Tenn., 215;   Logan v. State, 28 Tenn., 24;   Nelson v. State, 26 Tenn., 542.

3. **HOMICIDE.** Dying declarations. Admissibility. Question for court.

The admissibility of dying declarations is a question for the court. (*Post, p.* 606.)

Case cited and approved: Bolin v. State, 77 Tenn., 516.

4. **HOMICIDE.** Dying declarations. Admissibility. Question of fact.

The competency of a dying declaration is ordinarily a mixed question of law and fact. (*Post, p.* 607.)

5. **HOMICIDE.** Review. Admission of dying declaration.

While the supreme court has the power to review the action of the trial judge in holding a dying declaration admissible, it seldom does. (*Post, p.* 607.)

6. **CRIMINAL LAW.** Review. Admission of dying declaration.

Where the fact of declarant's condition depends on the credibility of witnesses, great weight is to be attached to the conclusions of the trial judge in holding a dying declaration admissible, and the court on appeal will not reverse, unless there is manifest error. (*Post, p.* 607.)

Cases cited and approved: Gipe v. State, 165 Ind., 433; Swisher v. Com., 26 Grat., 963.

7. **HOMICIDE.** Instruction on dying declaration. Reversible error.

In a prosecution for murder, instruction that dying declaration introduced in evidence was to be considered as the evidence of a witness, *held* reversible error, for a dying declaration is not put on the same plane as testimony of a witness appearing before the jury. (*Post, p.* 607.)

Cases cited and approved: Still v. State, 125 Tenn., 80; People v. Kraft, 148 N. Y., 631; State v. Vansant, 80 Mo., 67; State v. Dorris, 51 Or., 136; State v. Valenchia, 19 N. M., 113.

Case cited and distinguished: Poteete v. State, 68 Tenn., 261; Jollay v. State, 130 Tenn., 286.

8. **CRIMINAL LAW.** Record of divorce suit. Admissibility.

In prosecution for murder, *held*, that the record in a divorce case brought against defendant should not be read to the jury, since

Dickason v. State.

charges made in the bill were calculated to prejudice defendant's case. (*Post, p.* 610.)

9. **CRIMINAL LAW. Exception to dying declaration. Review.**
Where exeception below challenged entire dying declaration, most of which was competent, assignment of error ·as to part of declaration will be overruled on appeal, since incompetent portions should have been specifically pointed out. (*Post, p.* 610.)

FROM TIPTON.

Error to the Circuit Court of Tipton County.—S. J. EVERETT, Judge.

JNO. A. TIPTON and SIMONTON & GWINN, for plaintiff in error.

W. H. SWIGGART, JR., Assistant Attorney-General, for the State.

MR. JUSTICE GREEN delivered the opinion of the Court.

The plaintiff in error was indicted for the murder of Vesper Granderson. He was found guilty of murder in the second degree, and has appealed in error to this court.

We express no opinion on the facts of the case since it must be reversed and remanded for a new trial for certain errors of law occurring below.

The action of the trial court in admitting a statement of Granderson, made just prior to his death, as

a dying declaration is vigorously assailed by counsel for plaintiff in error.

Granderson was shot at close quarters, with a shotgun, in the abdomen. His wound was very large, of a desperate nature, and the intestines were exposed and protruded. He received this wound late in the evening and lived until the following day. A doctor was summoned on the night of the shooting and visited Granderson and made an examination. The doctor administered a dose of morphine on this visit, but did nothing further at that time. He returned with another physician the following morning. They again examined Granderson, and concluded that he had no chance whatever to recover, unless an operation was performed upon him. They thought that he had a mere chance for recovery if an operation was performed—about one chance in a thousand, as the physicians expressed it.

The doctors told Granderson that he would have a bare chance for recovery if he submitted to an operation. He protested against the operation; said it was no use; that he was going to die. After some further talk he ceased objecting to the operation and made the statement admitted in evidence. He never at any time, however, manifested any hope, and while the anæsthetic was being administered again protested; said it was useless, and he was going to die.

It is urged by counsel for plaintiff in error that these circumstances indicate that Granderson had not relinquished hope of recovery. It is said that other-

wise he would not have permitted the operation, and it is submitted that unless the declaration was made when the declarant was without any hope of recovery and believed death imminent and inevitable, such declaration is not competent.

The rule of evidence relied on by plaintiff in error is well established in this State. *Smith* v. *State,* 9 Humph. (28 Tenn.), 9; *Anthony* v. *State,* Meigs (19 Tenn.), 265, 33 Am. Dec., 143; *Baxter* v. *State,* 15 Lea (83 Tenn.), 657, and other cases.

We think, however, this rule is not applicable to the facts before us. We believe that Granderson regarded his death as inevitable and imminent at the time he made the declaration, and that he was without hope of recovery.

The sense of impending death may be shown by the language of the deceased, or inferred from the character of the wound, or set up by the testimony of physicians or other attendants. *Baxter* v. *State,* supra; *Anthony* v. *State,* supra; *Smith* v. *State,* supra; *Brakefield* v. *State,* 1 Sneed (33 Tenn.), 215; *Logan* v. *State,* 9 Humph. (28 Tenn.), 24; *Nelson* v. *State,* 7 Humph. (26 Tenn.), 542.

As tending to establish the consciousness of impending dissolution, our cases have attached much importance to the character of the wound.

In the case before us the injuries of the wounded man were of a desperate nature, and he could scarcely have contemplated them with any expectation of life. Moreover, he expressed to the doctors his belief

that he would die, and did not appear to have any faith whatever in the operation.

We do not think the bare circumstance that a person so wounded agrees to an operation indicates that such person entertains a hope of recovery. The patient is often too weak to resist the suggestion of attendant physicians, or he may yield for the sake of his friends or family. His mere consent to the operation cannot overcome other circumstances strongly indicating his sense of his condition.

There was some controversy among the witnesses below as to the circumstances under which this declaration was made, and this controversy is sought to be reopened here by counsel for plaintiff in error. There was an effort to impeach the testimony of one of the witnesses testifying to the surroundings of deceased and his mental *status* at the time of the declaration.

In this State the admissibility of dying declarations is a question for the court:

"And of this the judge is to determine alone, without the aid of the jury; for the jury shall not hear such declarations till the judge has determined that they are dying declarations, lest, peradventure, they may control their judgment, although, upon hearing other proof, they may become satisfied that they were not dying declarations." *Smith* v. *State,* supra.

"And that is a question to be determined by the judge, upon proof of the state of mind and condition of the deceased, at the time the declarations were made." *Brakefield* v. *State,* supra.

To like effect is *Bolin* v. *State,* 9 Lea (77 Tenn.), 516.

In *Smith* v. *State,* supra, this court reversed the action of the trial judge who found that deceased possessed the requisite consciousness of dissolution. This court thought the evidence offered did not warrant the judge in reaching this conclusion.

The competency of a dying declaration is ordinarily a mixed question of law and fact. While this court, therefore, has power to review the action of the trial judge in such a matter, it being merely a question of the admissibility of evidence, we very seldom do so. Where the fact of the declarant's condition depends on the credibility of witnesses examined by the judge, great weight is to be attached to his conclusion. This court will not reverse, unless there is manifest error. Such is the rule in most appellate tribunals. Some hold the action of the trial court conclusive. *Gipe* v. *State,* 165 Ind., 433, 75 N. E., 881, 1 L. R. A. (N. S.), 419, 112 Am. St. Rep., 238; *Swisher* v. *Com.,* 26 Grat., 963, 21 Am. Dec., 330; Wigmore on Evidence, section 1442; 1 R. C. L., 537, note, 8 Ann. Cas., 544.

In the course of his charge referring to the dying declaration the court below used this language:

"Such statement or declaration stands before you just as the evidence of any witness examined before you and is to be considered by you just as you would the evidence of any witness introduced on the trial of this cause."

This instruction is made the basis of an assignment of error in this court, and this assignment is well

taken, and for this error this case must be reversed.

Ordinarily the trial court instructs the jury to receive a dying declaration with caution. There was no such admonition in his honor's charge in this case. While in the absence of a seasonable request the case would perhaps not be reversed for this omission, the portion of the charge quoted is positive error, and warrants a reversal of the case. The language quoted from the charge is not elsewhere qualified therein, and the statements of the declaration have little or no corroboration in the other evidence.

In *Poteete* v. *State*, 9 Baxt. (68 Tenn.), 261, 40 Am. Rep., 90, this court said:

"Such testimony is subject to many objections and inherent infirmities. The party is not in condition, frequently, to give calm attention to the question to which he makes his statement. It is usually made in the presence of friends whose feelings are excited against the other party against whom they are to be used, and who may easily direct the dying man's attention to the points in the case bearing most heavily on the guilt of the accused, and who will most naturally leave out of view all that tend to a different view. The accused is not present, and has neither an opportunity to make suggestions or call attention to the circumstances in his favor, nor to cross-examine to show inaccuracies of memory, or expose bias from passion or prejudice."

This language was repeated and approved in *Still* v. *State*, 125 Tenn., 80, 140 S. W., 298.

Dickason v. State.

In *Jollay* v. *State*, 130 Tenn., 286, 170 S. W., 58, the court quoted and approved the following from Wharton on Criminal Evidence:

"Dying declarations have every element of dramatic evidence. As the last utterances of a sentient, conscious being, standing on the threshold of eternity, they possess an impressiveness out of all proportion to their evidentiary value. In all homicide cases, the elemental passions are at any moment apt to override the judgment. A court may be judicial and impartial, and a jury dispassionate, up to the point where the dying declaration is admitted, and then find its impartiality and selfrestraint seriously tried over the recital of the dying declaration."

So in view of the nature of such testimony heretofore pointed out, we think the court was in error in instructing the jury to treat the dying declaration just as they would the evidence of a witness who appeared before them, and whose testimony was sifted by cross-examination. Such a charge is declared to be erroneous by Mr. Elliott in his work on Evidence, volume 2, section 358. Like instructions have been held to be reversible error in *People* v. *Kraft*, 148 N. Y., 631, 43 N. E., 80, *State* v. *Vansant*, 80 Mo., 67, *State* v. *Dorris*, 51 Or., 136, 94 Pac., 44, 16 L. R. A. (N. S.), 668, *State* v. *Valenchia*, 19 N. M., 113, 140 Pac.. 1119, 52 L. R. A. (N. S.), 157, and other cases collected in note 56 L. R. A., 446.

In *Baxter* v. *State*, supra, the trial judge instructed the jury that the dying declaration should have the

139 Tenn.—39

same force as testimony as if the deceased had given her sworn statement in the form of a deposition.

This was held not to be reversible error. This court said the trial judge only meant that the declarations were to be received as if sworn to, as a deposition is, and this was just the light in which they were estimated; the apprehension of impending death being equivalent to the oath.

The court did not mean to say that a dying declaration was entitled to the same weight as the testimony of a witness appearing before the jury and there cross-examined, but rather was to be weighed as an affidavit. For in previous cases, as above noted, the infirmities of such evidence have frequently been pointed out by this tribunal. Under the great weight of authority a dying declaration is not put on the same plane as testimony of a witness appearing before the jury.

Inasmuch as this case must go back for a new trial, we think it proper to say that the record in the divorce case brought against the defendant should not be read to the jury, as the charges made in this bill are calculated to prejudice his case.

The assignment of error to that portion of the dying declaration said not to be a part of the *res gestae* is overruled. The exception below challenged the entire declaration, most of which is undoubtedly competent. Such an exception cannot be sustained merely because there is some incompetent matter in the declaration. The incompetent portions should have been particularly pointed out. *Baxter* v. *State,* supra.

For the reasons indicated, the case will be reversed and remanded for a new trial.