Chief Judge Desmond.
On a jury’s verdict defendant has been convicted of murder, first degree, and sentenced to death.
During the evening of February 5, 1956, in her New York City apartment, the victim, Bernice Edmondson, was shot. "When the police arrived she was still alive but died the next day at a hospital. The police officers testified at the trial that they talked with Miss Edmondson at the apartment and while she was being taken to the hospital but they were not asked to and did not testify as to what she told them. These circumstances are related, as we shall see, to the only alleged error argued to us on this appeal — that is, to the prosecutor’s explanations in his summation of the absence from the testimony of any ‘ ‘ dying declaration” by the deceased.
It was the theory of the People that in 1955 defendant, then about 45 years old, had met Miss Edmondson, who was a few years younger, had become friendly with her and had stayed overnight at her apartment a number of times, that later there were arguments between them, that defendant feared that the relationship was breaking up or broken, that he got a revolver and went to her home where there was another argument, and the deceased told defendant she did not want to see him again and ordered him from the place, whereupon he shot her.
The proof of defendant’s guilt is convincing and insufficiency thereof is not asserted on this appeal. The important testimony was given by the victim’s cousin Alice Handy and by Corethia Smith, a friend of defendant. The stories of these two witnesses *3 plus the confessions, oral and written, made out the People’s case.
Alice Handy told the jury that she knew defendant and the Edmondson woman and that the two had spent Christmas Day of 1955 in her home. About two weeks before the shooting the witness Handy, so she testified, was walking with Bernice Edmondson on the street when defendant suddenly appeared from a doorway and began to reproach Bernice about being away from her home when he called there. On this occasion he went with the two women to Bernice’s apartment and the witness stayed there till defendant left. Corethia Smith testified that she had known defendant for a long time when on February 9,1956 (four days after the shooting) he came to her home, told her he had shot his girl friend and asked Miss Smith to go to his (defendant’s) sister’s house to get information as to the condition of the girl friend. Defendant asked the Smith woman, according to her testimony, to tell his sister that he had gotten rid of the gun. The witness was a little vague about the gun matter but her recollection was refreshed by exhibition to her of a slip of paper on which, according to her, defendant had written some words to introduce her to his sister, and the witness had written down the sister’s address. She went to the sister’s house, she testified, and after talking with her saw defendant again and told him that his sister advised him to surrender, advice which he scorned. The witness Smith did not see defendant again until the trial, nearly five years later.
Two New York City police detectives gave evidence as to arresting defendant in Chicago in July, 1960 and as to admissions made to them by defendant during the train ride back to New York City. One of the detectives made pencilled notes of this conversation and they were read to the jury. According to the notes, defendant told the officers that, after ‘ going with ” Bernice for about six months, he felt he was losing her, that he got a gun and went to her house ‘ ‘ to have it out one way or the other ’ ’, that there was an argument, that she told him not to come any more and he got mad and shot her once and left. After defendant and the detectives arrived in New York defendant’s answers to questioning by an Assistant District Attorney were taken down by a stenographer and this statement, somewhat fuller than but not essentially different from the detective’s notes, went into evidence also.
*4 Defendant took the stand as the only defense witness and described his life as a boy in Baltimore, then his stay in New York City' and his drifting about the country until he was arrested in Chicago. He either had or pretended an unusually poor memory as to his age, his army experiences, etc. He said he had been introduced to Bernice Edmondson by a friend in a tavern and later had gone several times to parties at her apartment. He denied ever having been alone with her or ever having stayed overnight at her place. He flatly denied the shooting. He remembered being arrested in Chicago but denied talking to the policemen. He said he never owned a gun, never knew Corethia Smith and never talked to her or gave her a note to his sister. He swore he did not remember being questioned by the Assistant District Attorney.
Defendant’s confessions satisfied all the requirements of section 395 of the Code of Criminal Procedure and with the other proof justified the jury’s verdict of guilt. Defendant now argues, however, that the prosecutor’s comments in his summation with regard to ‘ dying declarations ’ ’ constituted grave and reversible error. The People, conceding that the language used by the prosecutor was ‘ ‘ ill-advised ’ ’, argue that there was no error of importance and that the People were merely answering an argument made by the defense. We agree with that. The prosecution, while producing proof by two policemen that they had talked to Miss Edmondson, had been careful not to let the witnesses describe the conversation. Undoubtedly, this procedure was followed because the requisites (see People v. Allen, 300 N. Y. 222, 226-228) for proof of a dying declaration were not available. Taking advantage of this situation, defense counsel in his summation argued that the prosecution’s case was weak because there was ‘ ‘ no dying declaration, as to who committed this crime ”. The prosecutor objected but the court said such argumentation was proper. The prosecutor then asked the court to instruct the jury as to just “ what a dying declaration is ” and the Judge replied that he would give such an explanation in his charge. Later he did so fully,' correctly and without objection or exception, explaining that there was in the case no proof of any dying declaration but that he was explaining the phrase to the jurors because of the argument made in this respect by defense counsel in his summation. ■ All *5 this was in order but the prosecutor had meanwhile exceeded the bounds of propriety in discussing the same matter in his own summation. Of course, the defense had already brought the idea before the jury and the People’s representative was guilty of no wrongdoing in explaining that ‘ ‘ There are certain rules governing dying declarations ” and that what is said by a person who afterwards died cannot be put in evidence “ unless you have the elements of a dying declaration there Unfortunately, the Assistant District Attorney did not stop with that but went on to say that, if those elements “ had been there, we would have had a dying declaration in this case.” That was certainly improper and could have been understood by the jurors as an assertion that, had it not been for technical rules of evidence, they would have heard testimony of an accusation against defendant made by Bernice Edmondson herself.
But it cannot reasonably be held that these remarks of the prosecutor amounted to serious or prejudicial error. Defense counsel did not object to them (see People v. Cascone, 185 N. Y. 317, 334) although he took exception to other statements by the People’s representative. The Trial Judge carefully and accurately made clear to the jury what a “ dying declaration ” is and how the matter came to be discussed by counsel.
The judgment should be affirmed.
Judges Dye, Fuld, Froessel, Van Voorhis, Burke and Foster concur.
Judgment of conviction affirmed.