Seymour Boyers, J.
The indictment charges the defendant with two counts of murder and one count of attempted murder.
A hearing on motions to suppress was held bef ore me to determine: (1) admissibility of statements made by the deceased, Mary Cimino; (2) admissibility of statements made by the defendant to the police; (3) admissibility of a gun and bullets.
At the outset, this court must point out that the initial relief sought by defendant is highly unique. A dying declaration, by its very nature, may not be the subject matter of a Huntley type suppression hearing. CPL 710.20 (subd. 3) clearly limits the subject matter of such a hearing to statements made by the defendant. Thus, when a motion is made to “ suppress ” a dying declaration, the procedural relief actually sought is a pretrial evidentiary ruling on the admissibility of this statement. A suppression hearing confines itself solely to the issue of whether or not constitutional rights were Violated by the improper acquisition of evidence. If the court finds such a violation, the only relief authorized is to 1‘ order that the evidence in question be excluded in the criminal action pending against the defendant.” (CPL 710.70, subd. 1.) Hearings of this nature do not touch upon the trial relevance of evidence, nor do they deal with admissibility; their function is simply to bar or admit on constitutional grounds. Hence, the defendant’s request for a premature ruling on competence is not part of a suppression hearing and is quite unusual.
A search of the cases reveals no precise authority for this particular form of advance ruling. While People v. Sandoval (34 N Y 2d 371) does permit a court to make a prospective ruling in advance of trial, this case limits itself only to cross-examination and does not appear to authorize the relief now sought. However, keeping in mind the fact that the admissibility of a dying declaration is a preliminary question that must be determined prior to jury submission (People v. Smith, 104 N. Y. 491; People v. Ludkowitz, 266 N. Y. 233), and that both sides have sought this determination in advance, the court will exercise its discretion by ruling on this question in the interests of justice and speedy trial.
*810 THE DYING DECLARATION HEARING
This first application then seeks to determine in advance the trial admissibility of a declaration made by one Mary Cimino, a victim of the murder charged in the indictment.
Sergeant John McManus, a witness for the prosecution, testified that he came to the premises located at 147-03 Tenth Avenue, Whitestone, New York, a few minutes after Patrolmen O’Hagan and Smith responded to that location on December 13, 1973. He observed Mrs. Cimino on the floor in a den-type room, lying face up and bleeding from her upper right shoulder. He asked her what happened and she replied, “ Benny shot me. Benny shot my husband and he’s dead and I’m going to die too ”. He asked her, “ Benny who? ” and she said, “ Benny Coniglio ”. He asked her, “ Where is Benny? ” and she replied “ Around the corner on Eleventh Avenue ”. Testimony of Dr. Rho, a deputy-chief medical examiner,- was to the effect that he did not examine Mrs. Cimino while she was still alive. He was present at her autopsy. He stated that the autopsy showed that the cause of death was bullet wounds of chest and head, including the lung. He further stated that in his opinion and with a reasonable degree of medical certainty,. Mrs. Cimino was in critical condition after she received three bullet wounds, almost dying.
The court is called upon to determine whether the foregoing statements made by Mrs. Cimino fall within the dying declaration rule.
A dying declaration cannot be received in evidence unless it appears: (1) that the declarant was in extremis-, (2) that the declarant was under a sense of impending death, without any hope of recovery; (3) the declarant, if living, would be competent as a witness.
Counsel for the defendant relies on numerous cases as grounds for its rejection,, one of which is People v. Richen (242 App. Div. 106). In that case the declarant’s statement was “ I don’t think I will live.” (p. 109.) Such a statement does not express a hopeless expectation that death was approaching. The court, referring to the statement, at page 109, stated: “ It does not reveal the despair of recovery which must be foundation for the reception of the declarations, ’ ’
In the instant case, the declarant stated “ Benny shot me. Benny shot my husband and he’s dead and I’m going to die too.” Such statement, the court finds, differs greatly from the statement made by the declarant in the Bichen case, {supra). In the *811 case at bar, the declarant expressed no hope for recovery. Her oral statement “I’m going to die too ” clearly shows that the declarant was fully aware of her impending death and lost all hope of recovery. It is not speculative or conjectural, but positive, definite, unequivocal and precise. The statement was made at a time when the declarant had no opportunity to reflect or contrive. The fact that an operation was performed in an effort to save her life does not negate the effect of her declaration. The fact that the victim died some hours after making the statement does not change its character or effect as a dying declaration. (People v. Chase, 79 Hun 296, affd. 143 N. Y. 669.) The court in that case stated (p. 297): “ If it appears that the declarant is conscious of impending death, and without expectation or hope of recovery, even if the final event is postponed longer than had been anticipated, such postponement in no manner affects the condition of mind of the declarant at the time of the making of the declaration; nor is the situation of the declarant less solemn and awful, nor is every motive to falsity less completely silent.”
From the testimony before me, I find that the oral statement made by the declarant, Mary Cimino, is therefore admissible as a dying declaration. I find that the declarant was in. extremis when the declaration was made; that she was under a sense of impending death, without any hope of recovery and, if living, she would be competent to testify as a witness. HoAvever, only those statements contained in said declaration which bear upon the declarant’s death are admissible. (Richardson, Evidence [10th ed.], § 312.)
Accordingly, the motion to prohibit the use of said declaration at time of trial is denied.
THE SUPPRESSION HEARINGS RELATIVE TO THE STATEMENTS AND PHYSICAL PROPERTY OF THE DEFENDANT
Police Officer Mascolo testified that on December 13, 1973 he was working a tour of duty as the recorder in a patrol car and that at about 7:25 p.m. on that day a call was received from central concerning an accident at Crosby and Westchester Avenue, Bronx; that a motorist who was in the middle of the street advised him of an accident involving a motorist who drove away who was driving a 1968 Chevy, gold color; that he then gave a description of that car over the radio and that he received back information that a car fitting the description was stopped about four blocks away at Tremont Avenue and Tan Place; that he went to said place; that the defendant Coniglio was seen in *812 the driver’s seat in the car; the motor was running; water was leaking through the radiator; that he placed the defendant under arrest for leaving the scene of an accident and driving while intoxicated, since he (the officer) smelled alcohol and observed the defendant in an apparently intoxicated condition, unsteady, and eyes bloodshot. The defendant had apparently urinated on himself; that he asked defendant for the auto registration or identification and defendant replied it was in the glove compartment of the car and to get it from the glove compartment He further testified that as he reached across the driver’s seat to open the glove compartment he saw a revolver on the floor underneath the glove compartment. The gun was loaded. It had three live rounds and two spent shells. Officer Mascolo also testified that, at the 45th Precinct, to which the defendant was taken, he apprised the defendant of his rights by reading the questions from a police “ hand out ” card and that the defendant stated that he understood. Officer Mascolo further testified that he asked the defendant the following question: “Now that I have advised you of your rights, are you willing to make any statements? ”, and the defendant replied, “ No ”.
It is abundantly clear that no incriminating statements were made by the defendant at the time the Miranda warnings were given to the defendant and the court finds beyond a reasonable doubt that such Miranda advisements were in fact given to the defendant.
However, the further testimony by Officer Mascolo indicated that after he had given the defendant the Miranda warnings and while the officer was writing the arrest record, the defendant, without being asked any questions, asked Officer Mascolo: ‘ ‘ Where did you find the gun ? I couldn’t find the gun. I wanted to get rid of the gun ”. The court concludes that these statements by the defendant were unsolicited and voluntarily made and therefore admissible. (People v. Torres, 21 N Y 2d 49.)
The court also finds from the testimony that the gun was seized following a lawful search incidental to a lawful arrest and that, therefore, the search and seizure was reasonable and permissible. There was probable cause for the arrest. A valid seizure may be made incidental to a lawful arrest. Such search is not limited to the arrestee’s person but also applies to the area within his immediate control. (People v. Fitzpatrick, 32 N Y 2d 499; Chimel v. California, 395 U. S. 752.) The police officer was properly and legally in the defendant’s automobile and was justified in seizing the gun which was in his view, having found the gun on the floor of the said automobile. (United *813 States v. Eisner, 297 F. 2d 595.) The record indicates that the police had received information that matched the description of the automobile that the defendant was operating, which was involved in leaving the scene of an accident. When stopped, the defendant was in an intoxicated condition. Leaving the scene of an accident is a crime. (Vehicle and Traffic Law, § 600.) Driving while intoxicated is a crime. (Vehicle and Traffic Law, § 1192.) Probable canse existed for making an arrest. (Brinegar v. United States, 338 U. S. 160.)
In Brinegar (supra, pp. 175-176), the Supreme Court said that: “ ‘ The substance of all definitions ’ of probable cause ‘ is a reasonable ground for belief of guilt ’ * * * And this ‘ means less than evidence which would justify condemnation ’ or conviction * * * Probable cause exists where ‘ the facts and circumstances within * * * [the officers’] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that ’ an offense has been or is being committed.”
The evidence admissible at a suppression hearing is not limited to evidence which would be competent on the trial of defendant’s guilt. Hearsay is admissible on the .issue of probable cause. (People v. Loria, 10 N Y 2d 368.)
The search in the instant case was reasonable since it was contemporaneous with a lawful arrest. (People v. Loria, supra; Preston v. United States, 376 U. S. 364.)
The People have the duty to go forward with proof that probable cause existed to arrest and search. Once this .is done, the burden shifts to the defendant to show illegality of the seizure. (People v. Malinsky, 15 N Y 2d 86; People v. Merola, 30 A D 2d 963, 964.) Where-the defendant challenges the admissibility of the physical evidence or makes a motion to suppress, he bears the ultimate burden of proving that the evidence should not be used against him. (People v. Berrios, 28 N Y 2d 361; People v. Baldwin, 25 N Y 2d 66.)
Moreover, it is undisputed from the testimony at this hearing that Officer Maseolo asked the defendant for -his registration or identification at the time of his arrest and the defendant answered by stating to the officer that it was in -the glove compartment of the car and to get it -out of the glove compartment.
Although the testimony of Officer Maseolo indicated that the defendant was under the influence of alcohol, yet the court finds that the response made by the defendant to Officer Maseolo’s question as to the registration and identification was sufficient *814 evidence that the defendant ¡was fully aware of the question and. understood the same and that the response was freely made.
When a prosecutor seeks to rely upon consent .to justify the lawfulness of a search, he has the burden of proving that the consent was in fact freely and voluntarily given (Bumper v. North Carolina, 391 U. S. 543, 548).
The court previously concluded in this decision that reasonable and probable cause existed for the search and seizure. The court further finds, based upon the testimony herein, that the defendant freely and voluntarily gave his consent to the search of his automobile, and that the People have sustained the burden of proof and have established that the defendant’s constitutional right was not violated.
Accordingly, the motions to suppress are denied in their entirety.