THE PEOPLE OF THE STATE OF NEW YORK, Respondent *v.* LEE H. ALLEN, Appellant.

Argued October 21, 1949; decided December 29, 1949.

*M. Maurice Chacchia* for appellant. I. The trial court erred in receiving in evidence as a dying declaration testimony of a statement allegedly made by decedent at a time when her condition was improved and her attending physician thought she had a chance of recovery. (*People* v. *Falletto,* 202 N. Y. 494; *People* v. *Sarzano,* 212 N. Y. 231; *People* v. *Wilcox,* 245 N. Y. 404; *People* v. *Ludkowitz,* 266 N. Y. 233; *People* v. *Bartelini,* 285 N. Y. 433; *People* v. *Mleczko,* 298 N. Y. 153; *People* v. *Smith,* 245 App. Div. 69; *People* v. *Miller,* 270 App. Div. 107; *Shepard* v. *United States,* 290 U. S. 96.) II. The trial court erred in receiving accusatory statements made by decedent not in the presence of defendant and while defendant was in such a state of intoxication as not to comprehend the nature of such statements. (*People* v. *Kennedy,* 164 N. Y. 449; *People* v. *Conrow,* 200 N. Y. 356; *People* v. *Koerner,* 154 N. Y. 355.) III. Defendant has been illegally sentenced as a second offender because the alleged prior conviction was invalid and because a conviction under section 480 of the Penal Law does not constitute a prior conviction under section 1941 of the Penal Law. (*People* v. *Buckley,* 178 Misc. 545; *People ex rel. Carollo* v. *Brophy,* 294 N. Y 540.)

*Thomas Croucher, District Attorney,* for respondent. I. Decedent's dying declaration was admissible and the trial court did not err in receiving it. (*People* v. *Del Vermo,* 192 N. Y. 470; *People* v. *Ludkowitz,* 266 N. Y. 233; *People* v. *Falletto,*

202 N. Y. 494; *People* v. *Sarzano*, 212 N. Y. 231; *People* v. *Bartelini*, 285 N. Y. 433; *People* v. *Stacy*, 119 App. Div. 743, 192 N. Y. 577; *People* v. *Grunzig*, 1 Parker Cr. Rep. 299.) II. There was no error in receiving the statements made by decedent the night she received her wound. (*McKee* v. *People*, 36 N. Y. 113; *Kelley* v. *People*, 55 N. Y. 565; *People* v. *Rutigliano*, 261 N. Y. 103; Abbott on Criminal Trial Practice, § 597, p. 1117; *Hochrieter* v. *People*, 2 Abb. Ct. App. 363.)

DESMOND, J. Sometime between 10:00 P.M. and midnight on March 20, 1947, in defendant's small apartment in Geneva, N. Y., Anna Allen, defendant's wife, suffered a deep abdominal wound from a kitchen knife. She died in a hospital at about 11:00 P.M. on March 25, 1947. Defendant, alone with his wife when she was cut, was charged with the fatal wounding and, indicted for murder, second degree, was convicted of manslaughter, first degree.

The proof at the trial may be considered under these five heads:

1. Testimony as to the condition of the wife when found in the apartment by a lodger, and when received at the hospital a little later.

2. Testimony that the wife, after she was hurt, told the lodger, and told policemen, in defendant's presence, that " Al " (defendant) " stabbed her ".

3. Testimony of a similar accusation made by the wife at the hospital about twelve hours before her death, and received in evidence as a dying declaration.

4. Defendant's statement to the police on the day after the wounding of his wife, in which he said that there had been a drinking bout that night, then a quarrel, that his wife had picked up the knife, whereupon he had tried to take it from her and that in the ensuing struggle she had somehow been stabbed.

5. Defendant's testimony at the trial, differing in detail only from his pre-trial statement (No. 4 above).

Obviously, the judgment of conviction needs the support either of the accusatory statements, or of the so-called dying declaration, all of which were objected to on the trial as hearsay. It is our conclusion that those objections were well-founded, that none of the testimony, noted at Nos. 2 and 3 above, was admis-

sible, and that, since there was no other incriminating proof, defendant should have had, and must now have, a dismissal of the indictment.

The accusatory statements were testified to by a lodger at the apartment, who came home from work an hour or so after the wounding, and by a police officer, summoned by the lodger. The lodger, arriving at the apartment, found the bleeding wife in the bedroom, and defendant sitting in the kitchen five or six feet away. The wife, according to the witness, said to the witness " Al stabbed me "; this witness' testimony was self-contradictory to some extent, as to whether or not the husband immediately denied the accusation, but a fair interpretation of it is that he made a denial, but not at once. The police officer testified that, summoned to the place, he asked the lodger to ask Mrs. Allen who had stabbed her, and that the latter again answered " Al " and further identified " Al " as being her husband, this defendant. The officer then, as he testified, asked defendant why he had done it, but defendant gave an equivocal reply. Defendant was then arrested. This same police officer told the jury that defendant was so intoxicated that he was unable at that time, or later that night, to give any coherent account of what had happened. On the stand, defendant denied that he had heard his wife accuse him.

The rule is settled that such accusatory statements, not denied, may be admitted against the one accused, as admissions, but only when the accusation was " fully known and fully understood " by defendant (*People* v. *Koerner,* 154 N. Y. 355, 374), and when defendant was " at full liberty to make answer thereto, and then only under such circumstances as would justify the inference of assent or acquiescence as to the truth of the statement by his remaining silent " (*People* v. *Conrow,* 200 N. Y. 356, 367). The record here falls far short of meeting those tests. It is not certain that defendant even heard his wife's charges, he seems to have denied guilt (to the lodger) soon afterwards, he was under no obligation to speak at all when under arrest or about to be arrested (*People* v. *Rutigliano,* 261 N. Y. 103, 107), and, most important, he was to some considerable degree intoxicated. His failure to deny, or to make immediate and positive denials, could not, under such circumstances, be treated as voluntary conduct equivalent to an admission of guilt. Such hearsay evi-

dence is never to be admitted unless clearly within the rule (*People* v. *Kennedy,* 164 N. Y. 449, 457). It was, therefore, error to receive such testimony, and, in such a case as this, serious error.

Now as to the " dying declaration ". Mrs. Allen was taken to the hospital early in the morning of March 21, 1947, and lived until eleven o'clock in the evening of March 25th. Soon after admission to the hospital, she was given blood plasma: and the incision, which had penetrated the abdominal wall and perforated her intestine, was sewn up. Later she developed peritonitis and was for some time in an oxygen tent. During her four and a half days in the hospital she was unconscious at times. Her mother testified that, twelve hours before Mrs. Allen died, she told her mother, when the two were alone in the sick room, that she and her husband had an argument and " he grabbed up the bread knife and stabbed her ". We pass the point that this narration was somewhat equivocal, and need not necessarily have been meant to describe an intentional stabbing. We address ourselves to the question of whether it was a " dying declaration " within the strict rules allowing the use, on a trial, of that type of hearsay.

The People justify the trial court's acceptance of this declaration, by pointing to testimony which, the People contend, meets all the preliminary requirements of the dying declaration rule. There was proof that Mrs. Allen had received the last rites of her church shortly after arriving at the hospital, that on the next day, reminded by a caller that her (the wife's) birthday would come a month later, she replied that she " wouldn't live that long "; that she asked that the oxygen tent be removed because she was " going to die anyway "; that on March 21st she told a relative that she did not think she would ever get well; and that on several occasions, down to the night of March 24th-25th, she told her nephew, who helped care for her, that she knew she was going to die, because all her relatives had come to see her. While in the hospital she never expressed any belief or hope of recovery but, on the other hand, no one, so far as appears, ever told her that her death was imminent, and, indeed, the attending physician, who said that at times she seemed likely to live and at others likely to die, testified that

on the very day she died and during the morning on which she made the " dying declaration " to her mother, he (the physician) thought she was going to get better.

There are writings innumerable stating and applying the rules for admission of dying declarations. All of them emphasize, in one form of words or another, the absolute and unvarying necessity for these two showings, at least: that " the declarant was *in extremis* " and " was under a sense of impending death, without any hope of recovery " (Richardson on Evidence [7th ed.], § 304). " The principle upon which dying declarations are received in evidence is that the mind, impressed with the awful idea of approaching dissolution, acts under a sanction equally powerful with that which it is presumed to feel by a solemn appeal to God upon an oath. * * * Safety in receiving such declarations lies only in the fact that the declarant is so controlled by a belief that his death is certain and imminent that malice, hatred, passion and other feelings of like nature are overwhelmed and banished by it. The evidence should be clear that the declarations were made under a sense of impending death without any hope of recovery " (*People* v. *Sarzano,* 212 N. Y. 231, 234–235). In *People* v. *Ludkowitz* (266 N. Y. 233, 239) this court said that the expressions quoted above from the *Sarzano* opinion (*supra*) mean that it must be shown that " the deceased was, at the time, under the sense of impending death and without any hope ". (As to the requirement that this be " at the time " of the statement, see, also, *People* v. *Becker,* 215 N. Y. 126, 145.) Competency of the declaration as evidence depends on the state of declarant's mind " when he made it " (*People* v. *Falletto,* 202 N. Y. 494, 502). Thus, two of the unyielding requirements are that the dying declaration must be the product of a considered certainty of death near at hand; not a mere " suspicion or conjecture " (*People* v. *Bartelini,* 285 N. Y. 433, 440), and that the statement must be made under, and result from, a present sense of that impending death. Here there was not shown any certainty on declarant's part that she was about to die, and, more conspicuously, there was absent the slightest intimation that her statements to her mother, as to her husband's stabbing her, were made under a sense of, or because of, or were controlled by, any such belief. Not only were her predic-

tions of death made casually and not solemnly, but her accusation was not shown to have any near relation, in time or thought, to those earlier expressions as to nearness of death. What she said about her husband was disconnected from what she had said about her own prospects for life or death, and what she said about death could not have been based on more than suspicion or conjecture, since no one had told her she was going to die, and her physician thought she was recovering.

The settled rules as to dying declarations " may not be broadened except by statute " (*People* v. *Becker, supra,* 215 N. Y. at p. 146). It is indeed a broadening, and a dangerous one, that we are asked to agree to here.

Our conclusion is that there is in this record no admissible evidence of guilt. This conclusion makes it unnecessary to discuss appellant's other arguments except to say that we agree with appellant — and the District Attorney's commendable concession — that the proceedings had against this defendant in the County Court of Ontario County on June 30, 1933, on another criminal charge, did not amount to a conviction.

The judgments should be reversed, and the indictment dismissed.

Lewis, J. (concurring in part). My study of this record leaves me in disagreement with the decision about to be made. Without repeating evidence, which has been fairly outlined by Judge Desmond, I agree that, in the circumstances surrounding the accusatory statements made by the decedent to the witnesses Florence Callon and police sergeant Gigliotti, the admission of those statements in evidence constituted reversible error. (*People* v. *Koerner,* 154 N. Y. 355, 374; *People* v. *Conrow,* 200 N. Y. 356, 367; *People* v. *Kennedy,* 164 N. Y. 449, 456–457.)

I do not agree that the Trial Judge erred when — with instructions which I regard as appropriate — he submitted to the jury a dying declaration, made by the decedent twelve hours before her death. The record is in sharp contrast to that of the ordinary homicide where the victim's dying declaration is prompted by stereotyped questions carefully designed to acquaint the declarant with the imminence of death and to qualify the declaration within controlling rules of evidence. Here it is the *unprompted* character of decedent's statements

which reinforces credence in them. There is undisputed evidence that, without being interrogated, she repeatedly stated in simple words that she was " going to die ". Those voluntary statements were not mere " suspicion or conjecture " that death was imminent (*People* v. *Bartelini*, 285 N. Y. 433, 440) ; nor do they record any doubt whatever that she sensed impending death and was without hope of recovery. The record proof of those statements thus served later to qualify her dying declaration for admission in evidence. (*People* v. *Falletto*, 202 N. Y. 494, 500; *People* v. *Ludkowitz*, 266 N. Y. 233, 238–243; *People* v. *Sarzano*, 212 N .Y. 231, 234–235; *People* v. *Del Vermo*, 192 N. Y. 470, 487–488; *People* v. *Kraft*, 148 N. Y. 631, 633–636; *People* v. *Smith*, 104 N. Y. 491, 493–495.)

At least, in my opinion, it cannot be said as a matter of law that the Trial Judge erred when he submitted the decedent's dying declaration to the jury with the following instructions:

" You will recall that during the course of the trial evidence was given by several witnesses as to the physical condition of Anna Allen, the deceased, while she was in the hospital, the prosecution being desirous of introducing into evidence a statement by the deceased which is known as a ' dying declaration.'

" A ' dying declaration ' is a statement of material facts concerning the cause or circumstances of a homicide or killing, made by the victim under solemn conviction of impending death.

" You will recall the testimony of Anna Allen's mother, who told you what Anna Allen said were the circumstances of her injury. I hardly need point out to you that this is hearsay evidence, the mother coming into Court here and being sworn on the witness stand and telling you what her daughter told her at the hospital. The Court felt under all of the circumstances that that statement of Anna Allen, the deceased, made in the hospital, if you find that she made such a statement, should be submitted to you, and its weight and credibility is for your consideration.

" There is a caution that goes with this for while dying declarations, when admitted in evidence, are entitled to be considered as having the weight of an oath, they are not of the same value and weight as direct evidence of the witness, subject to cross examination, and whose demeanor when on the stand is open to your observation.

" If you believe that Anna Allen made the statement concerning how she received her injury as testified to by her mother, you will bear in mind that such evidence is a mere statement of what was said by Anna Allen while she was not under oath, made while she was lying on her hospital bed, and made while her body was no doubt in pain, her mind agitated and perhaps her memory shaken by the thought of impending death. Clearly, Anna Allen, the subject of this homicide, could not come here to testify because she is dead. So her unsworn statement of what happened to her is considered as the best evidence obtainable and is admitted for your consideration.

" But again I say to you that such evidence when admitted is, under the law, not of the same value and weight as the testimony of a witness given in open Court under the sanction of an oath, but you may consider such evidence. That is, what her mother said Anna Allen said while she was in the hospital."

It must be conceded that the instructions to the jury quoted above were an accurate statement of rulings by this court found in the decisions cited (*supra*) where the admissibility of dying declarations was considered. If in this case the admissibility of decedent's dying declaration were the only problem presented I would vote to affirm the judgment of conviction. In view, however, of the erroneous receipt in evidence of accusatory statements by the decedent, I dissent from the view of a majority of the court that the indictment should be dismissed, and I vote for reversal and a new trial.

LOUGHRAN, Ch. J., DYE and FULD, JJ., concur with DESMOND, J.; LEWIS, J., concurs for reversal but votes to order a new trial in an opinion in which CONWAY and BROMLEY, JJ., concur.

Judgments reversed, etc.