OPINION OF THE COURT
Chief Judge Wachtler.
 Defendant, Angel Nieves, was convicted after a jury trial of manslaughter in the second degree (Penal Law § 125.15 [1]). The evidence at trial establishing his guilt consisted almost entirely of statements made by the victim of a stabbing shortly before she died. The issue on this appeal is whether these statements were admissible at trial pursuant to the "dying declarations” exception to the general rule prohibiting the use of hearsay evidence. We conclude that the statements do not qualify as dying declarations, and we also reject the attempt by the People to raise for the first time on appeal the alternative argument that the statements were admissible as "excited utterances.”
At approximately 8:30 p.m. on January 16, 1982, the defendant, Angel Nieves, and another male carried Josephine Gonzalez into the emergency room at Bronx Lebanon Hospital. In response to inquiries by a doctor and nurse, defendant and his companion stated that Miss Gonzalez had been stabbed and that they had brought her to the hospital in a taxicab for which they had to wait outdoors for approximately 20 minutes. Miss Gonzalez was wearing only light-weight clothing, and her body was wet and extremely cold. Although conscious when brought in, she was in shock due to her low body temperature, and was unable to speak.
The doctor’s initial examination of Miss Gonzalez revealed a small incision in the areola of her left breast, indicating the possibility of a heart wound. The doctor and the nurse commenced emergency procedures designed to warm the victim’s body and stabilize her vital signs. After 10 to 15 minutes of treatment, Miss Gonzalez’s condition improved and she became lucid.
At some point shortly after Miss Gonzalez came out of shock, the doctor and nurse began to question her. Miss Gonzalez first responded to questions as to her name and address. The nurse then asked her what had happened and *129 she stated that she had been stabbed. When asked who had stabbed her, Miss Gonzalez pointed at the defendant, standing nearby in the emergency room, and said "Angel”. In response to further inquiry, she stated that she and the defendant had been at a party and that he had gotten jealous and had then stabbed her.
The nurse immediately called hospital security, and about 10 minutes later Police Officer Perez arrived at the emergency room. After being told by the doctor and nurse what Miss Gonzalez had said, Officer Perez located the defendant, who then was standing in a small anteroom next to the emergency room, and brought him to Miss Gonzalez. The police officer asked her whether the defendant was the person who had stabbed her, to which she replied "Yes,” and he then asked her what the defendant’s name was, to which she replied "Angel Nieves”. Officer Perez then took the defendant out of the emergency room, frisked him, and found a knife on his person. Although the knife had bloodstains on it, the amount of blood was insufficient to determine how long it had been there or whether it was from Miss Gonzalez.
During a period of approximately 20 to 25 minutes, Miss Gonzalez was alert and had no difficulty responding to the questions posed to her. She did complain, however, of strong chest pains. She stated several times that she did not want to die, although neither the doctor nor the nurse ever told her that she was dying or that her condition was critical.
Miss Gonzalez’s condition worsened when blood began to seep into the wound, which had punctured both the pericardium, the sac surrounding the heart, and the heart itself. As her vital signs stabilized, more and more blood became trapped in the pericardium, causing a slow strangulation of the heart. The doctor’s efforts to alleviate this pressure were unsuccessful and, after hand massaging her heart for 45 minutes, he pronounced her dead at 10:15 p.m.
Defendant was indicted for second degree murder (Penal Law § 125.25). He then moved for inspection of the Grand Jury minutes and to dismiss the indictment on the ground that the evidence before the Grand Jury was not legally sufficient (see, CPL 210.20, 210.30, 190.65). The court, after reviewing the minutes, denied the motion to dismiss, but ordered that a pretrial hearing be conducted to determine the admissibility of the statements made by Miss Gonzalez.
At the start of the hearing, the prosecutor stated, as to the *130 admissibility of the statements, that they met the legal requirements of "dying declarations”. The doctor, the nurse and Police Officer Perez testified at the hearing as to the events at the hospital. At the close of the evidence, defense counsel reiterated that the issue before the court was whether the statements were "dying declarations”. He then noted the possible alternative argument that the statements were spontaneous exclamations, but added that the prosecutor had not made this contention. The prosecutor responded that he did not believe that Miss Gonzalez’s assertions could qualify as spontaneous statements, given the length of time between the stabbing incident and the making of the statements and that he therefore agreed that their admissibility turned on whether they were dying declarations.
The court concluded that Miss Gonzalez was "in extremis” at the time she made her statements and that the nature of the wound, together with the surrounding circumstances, supported an inference that she knew that she was dying. It thus ruled that the statements were admissible at trial as dying declarations.
The evidence at trial with respect to the events in the emergency room was largely identical to that adduced at the hearing, and the testimony recounting Miss Gonzalez’s statements was permitted in accordance with the pretrial ruling. The jury convicted defendant of second degree manslaughter, which was submitted to it as a lesser included offense of murder in the second degree.
The Appellate Division affirmed the judgment of conviction, though the majority of that court relied on a different ground for the admissibility of Miss Gonzalez’s statements. The majority first disagreed with the trial court’s ruling that the statements met the requirements of dying declarations, finding instead that the evidence did not show that Miss Gonzalez " ' "was under a sense of impending death, without any hope of recovery” ’ ” when she made them (108 AD2d 165, 168, quoting People v Allen, 300 NY 222, 227). The Appellate Division majority went on to find, however, that the statements were admissible as "excited utterances,” an argument made for the first time by the People in their brief to that court. The majority rejected the defendant’s contention that the People could not attempt to sustain the admissibility of evidence on a ground not raised before the trial court, concluding that such a bar applied only where an initial ruling of *131 admissibility was made as a determination of a pretrial motion to suppress evidence (see, CPL art 710).
The concurring Justice at the Appellate Division concluded that the statements were properly received into evidence as dying declarations. Leave to appeal was granted by a Judge of this court.
Miss Gonzalez’s statements,[1] of course, constituted hearsay evidence, as they were made out of court and were sought to be introduced for the truth of what she asserted (see, People v Edwards, 47 NY2d 493, 496; Richardson, Evidence § 200 [Prince 10th ed]). Accordingly, they were admissible only if the People demonstrated that they fell within one of the exceptions to the hearsay rule. Although the People now contend that the statements should be admissible as long as they are deemed "reliable”, without regard to whether they fit into any such exception, they made no such argument before the trial court. Furthermore, we are not prepared at this time to abandon the well-established reliance on specific categories of hearsay exceptions in favor of an amorphous "reliability” test, particularly in criminal cases where to do so could raise confrontation clause problems (US Const 6th Amend; NY Const, art I, § 6; see, California v Green, 399 US 149, 155-156; McCormick, Evidence § 252, at 752 [Cleary 3d ed]; cf. Ohio v Roberts, 448 US 56, 65-66, and n 8; United States v Barlow, 693 F2d 954, 964, cert denied 461 US 945).[2]
Dying declarations have long been treated as an exception to the general rule excluding hearsay evidence. The notion that deathbed statements have some particular trustworthiness existed long before the hearsay rule itself gained general acceptance in the early 18th century, and thus, it is not surprising that formal recognition of a dying declarations exception occurred by the middle of that century (see, 5 Wigmore, Evidence § 1430 [Chadbourn ed]; McCormick, Evidence § 281 [Cleary 3d ed]).
Although originally the use of dying declarations was not *132 limited to particular types of cases (see, 5 Wigmore, op. cit. § 1431; McCormick, op. cit. § 283, at 831), by the early 19th century common-law courts had begun to restrict their use to homicide prosecutions, and this limitation became firmly engrained in New York law (see, e.g., People v Becker, 215 NY 126, 145; Richardson, Evidence § 311 [Prince 10th ed]).[3] Numerous cases have rationalized the exception for dying declarations in homicide cases as one of "necessity”, as in some cases murderers might escape punishment if statements by the dying victim were excluded (see, e.g., People v Bartelini, 285 NY 433, 439; People v Ludkowitz, 266 NY 233, 241; People v Liccione, 63 AD2d 305, 316 [Simons, J.], affd 50 NY2d 850).
Traditionally, deathbed statements were accepted as trustworthy on the theory that a person about to be judged by a Supreme Being was not likely to risk divine retribution by telling a lie (see, e.g., Rex v Woodcock, 1 Leach 500, 168 Eng Rep 352 [KB]; People v Kraft, 148 NY 631, 634; Fisch, New York Evidence § 916 [2d ed]). As early as 75 years ago, however, this court noted that "[t]he fear of punishment after death is not now regarded as so strong a safeguard against falsehood as it was when the rule admitting such declarations was first laid down” (People v Falletto, 202 NY 494, 499). Support for the exception is now generally based on the alleged psychological effect that awareness of impending death has on the declarant, as such knowledge is presumed to remove from the mind all motivation and inclination to lie (see, 5 Wigmore, op. cit. § 1443; Prince, Policy Considerations and Changes in the Hearsay Rule, 19 NY L Forum 761, 763; accord, People v Bartelini, 285 NY 433, 439, supra).
Under any justification for permitting the use of dying declarations, the crucial inquiry is directed toward the state of mind of the declarant. Thus, by the early part of this century it was established that for a statement to constitute a dying declaration, the declarant must not only have been in ex-tremis, but must also have spoken under a sense of impending death, with no hope of recovery (see, People v Ludkowitz, 266 NY 233, 239, supra; People v Sarzano, 212 NY 231, 235; People *133 v Del Vermo, 192 NY 470). Belief by the declarant that death is possible, or even probable, is not sufficient (People v Sarzano, supra). Rather, "[tjhere must be 'a settled hopeless expectation’ * * * that death is near at hand” (Shepard v United States, 290 US 96,100 [Cardozo, J.]).
The last time we addressed the subject of dying declarations was in 1949 when we reaffirmed these traditional requirements (People v Allen, 300 NY 222, 227, supra), rejecting the suggestion that the rules for what would constitute a dying declaration should be loosened. The People now argue once again that the traditional requirements for the declarant’s state of mind are too strict, and essentially urge that any statement made by a seriously injured person be admissible where there are some indicia of trustworthiness. We again decline, however, to broaden the exception.
This court has always regarded dying declarations with a degree of skepticism (see, e.g., People v Ludkowitz, 266 NY 233, 240, supra; People v Corey, 157 NY 332, 349). As was stated in People v Bartelini (285 NY 433, 440, supra), " 'Dying declarations are dangerous, because made with no fear of prosecution for perjury and without the test of cross-examinatian, which is the best method known to bring out the full and exact truth’ ” (quoting People v Falletto, 202 NY 494, 499, supra; see also, Fisch, op. cit. § 923; Prince, op. cit., 19 NY L Forum, at 765). It has long been the rule in this State that dying declarations are not of equal weight to in-court testimony (see, e.g., People v Kraft, 148 NY 631, 634), and, upon request, the jury must be so charged (see, People v Mleczko, 298 NY 153, 161; People v Bartelini, 285 NY 433, 442, supra).
The issue which defendant has raised is whether there was sufficient evidence that Miss Gonzalez made the statements "while under a sense of impending death with no hope of recovery” so that it was within the trial court’s discretion to admit them into evidence. The People correctly point out that a statement’s qualification as a dying declaration does not hinge upon the declarant having actually expressed a certainty of impending death. As we have already recognized, there is no standardized ritual spoken by all dying persons (People v Bartelini, 285 NY 433, 440, supra). There is also no unvarying requirement that the declarant had been told by a doctor that an imminent death was certain (People v Falletto, 202 NY 494, 500-501, supra; Fisch, op. cit. § 918, at 533).
Rather, the requisite state of mind of declarant may be *134 found from all of the circumstances surrounding the statement sought to be admitted (see, e.g., People v Ludkowitz, 266 NY 233, 239, supra). Any statements made by the declarant as to his condition or his expectations, as well as any statements made by medical personnel to the declarant as to the severity of his injury, are, of course, highly relevant. Among the other factors to be considered by the trial court are the nature and severity of the wound, as apparent to the declarant; whether the person’s condition appeared to be improving or declining when the declaration was made; and, whether any actions normally associated with an expectation of imminent death, such as asking for last rites, disposing of property, or attempting to make arrangements for the care of family members were taken (see, People v Ludkowitz, supra; Richardson, op. cit. § 309, at 285).
Here, the circumstances were simply insufficient to infer the requisite state of mind. Miss Gonzalez’s own statements— complaining of chest pains and stating that she did not want to die — were, as found by the Appellate Division, equivocal, disclosing perhaps more a fear of death than an expectation of it. Neither the doctor nor the nurse ever told her that she was dying, or even informed her that death was possible. Although the wound turned out to be fatal, it was not of such nature that its severity would have been obvious to Miss Gonzalez (compare, People v Falletto, 202 NY 494, supra [declarant bleeding and choking from knife wound to throat]; People v Liccione, 63 AD2d 305, affd 50 NY2d 850, supra [declarant bleeding profusely from multiple stab wounds and under belief that she had also been shot]). The doctor testified that at the time Miss Gonzalez spoke, he did not think that she would die, and the record is clear that when she spoke her condition was improving, or at least stabilizing. Finally, she took no steps which would reveal an expectation of death, despite having had ample opportunity to do so. Consequently, the statements were not admissible as dying declarations.
The People alternatively seek affirmance of the Appellate Division order on the ground that the statements were admissible as "excited utterances,” an argument accepted by the Appellate Division despite the People having expressly declined to rely on this theory before the trial court.[4]
*135 Excited utterances, like dying declarations, have long been recognized as an exception to the hearsay rule (see, e.g., People v Del Vermo, 192 NY 470, 483, supra; see generally, People v Caviness, 38 NY2d 227, 230-231). Statements within this exception are generally made contemporaneously or immediately after a startling event which affected or was observed by the declarant, and relate to the event (see, People v Edwards, 47 NY2d 493, 496-497). The essential element of the exception is that the declarant spoke while under the stress or influence of the excitement caused by the event, so that his reflective capacity was stilled (see, People v Caviness, 38 NY2d 227, 230-231, supra; People v Marks, 6 NY2d 67, 71). An utterance made "as a direct result of sensory perception during that brief period when considerations of self-interest cannot be immediately brought to bear” is deemed sufficiently trustworthy to be admitted into evidence as an expression of the true belief of the declarant with respect to the facts observed (People v Edwards, 47 NY2d 493, 497, supra).
The spontaneity of a declarant’s statement is measured by the surrounding facts and cannot be determined simply by reference to the amount of time that transpired between the event and the statement. Thus, the condition of the declarant during any lapsed period of time, and the declarant’s activities during that period, must also be considered (People v Edwards, supra). Another factor in determining spontaneity would be whether a statement was made in response to interrogation.
It is apparent that a determination whether Miss Gonzalez’s statements qualified as excited utterances requires factual determinations dissimilar to those surrounding the issue of dying declarations. Little or no effort was made at the hearing before the trial court to establish, for example, the amount of time between the stabbing incident and the statements, Miss Gonzalez’s probable condition before going into hypothermie shock, how soon after she came out of shock the questioning began, and whether she appeared to be "excited” or under stress when she spoke.
We have recently reaffirmed the principle that the Appellate Division cannot uphold conduct of the police, and thereby affirm a trial court’s denial of suppression of evidence obtained pursuant to such conduct, on a factual theory not *136 argued by the People before the trial court (see, People v Johnson, 64 NY2d 617, 629, n 2; People v Dodt, 61 NY2d 408, 416). The People attempt to distinguish these cases on the ground that they involved suppression motions under CPL article 710, for which a pretrial hearing is generally required (see, CPL 710.40), while the use of a pretrial hearing in the present case was discretionary, as the admissibility of the hearsay statements could have been resolved through the use of a hearing during the trial, outside the presence of the jury (see, People v Liccione, 63 AD2d 305, 316, affd 50 NY2d 850, supra).
In the present context, however, this is a distinction without a difference. If the Appellate Division’s determination were allowed to stand, the defendant would still be denied the opportunity to present evidence to counter a factual theory advanced by the People in support of the admissibility of evidence. The record does not conclusively demonstrate that Miss Gonzalez’s statements were excited utterances, and clearly the argument could have been countered by the defendant had the People raised it before the trial court. Accordingly, the Appellate Division improperly relied on the excited utterances exception in affirming the conviction (see, e.g., Sega v State of New York, 60 NY2d 183, 190, n 2; see also, Cover v Cohen, 61 NY2d 261, 274; Cohen and Karger, Powers of the New York Court of Appeals §§ 161, 162 [rev ed]).
The order of the Appellate Division must, therefore, be reversed. Additionally, because defendant was convicted only of a lesser included offense, for which he was not indicted, the indictment must be dismissed (see, People v Gonzalez, 61 NY2d 633, 634-635; People v Mayo, 48 NY2d 245, 253). The People, of course, are free to seek a new indictment for manslaughter in the second degree.
Should there be a second trial, we would note that there is a significant difference between an objection, as the one made in this case, to the admissibility of evidence based on an evidentiary principle such as the hearsay rule, and a motion to suppress evidence made pursuant to CPL article 710. In the former case, even if a ruling on the objection is, for convenience, made prior to trial, it is viewed as a trial ruling, and thus ordinarily will not be binding in a subsequent trial (see, e.g., People v Malizia, 62 NY2d 755, 758, cert denied — US —, 105 S Ct 327). Thus, there would be no basis for precluding *137 the People from seeking to admit Miss Gonzalez’s statements as excited utterances at a second trial.[5]
Accordingly, the order of the Appellate Division should be reversed and the indictment dismissed.
Judges Meyer, Simons, Kaye, Titone and Hancock, Jr., concur; Judge Alexander taking no part.
Order reversed, etc.

. The statements, for purposes of the hearsay rules, include the nonverbal assertions made by Miss Gonzalez in pointing to the defendant when asked who had stabbed her (see, People v Caviness, 38 NY2d 227, 230; People v Modas, 201 NY 349, 354).

. In contrast, it is well recognized that statements falling within "firmly rooted” exceptions to the hearsay rule do not ordinarily deny any confrontation rights (Ohio v Roberts, 448 US 56, 66; see, e.g., Mattox v United States, 156 US 237, 243-244 [dying declarations]; People v Corey, 157 NY 332, 347 [same]; United States v Nick, 604 F2d 1199 [excited utterances]).

. In line with this limitation are the additional requirements that the prosecution is for the death of the declarant and that the statements concern the circumstances of his death (People v Becker, 215 NY 126, 145; Richardson, Evidence § 311 [Prince 10th ed]). Although the restrictions on the use of dying declarations have been attacked as arbitrary (see, e.g., 5 Wigmore, Evidence § 1436 [Chadbourn ed]; McCormick, Evidence § 283 [Cleary 3d ed]), we need not address such criticisms on this appeal.

. During the brief discussion of this theory at the hearing (see, supra, p 130), the terms "spontaneous exclamations” and "spontaneous declarations” were used. These terms are synonymous, for purposes of hearsay rules, with *135 the term "excited utterance” now used by the parties (see, People v Ed-wards, 47 NY2d 493, 496-497, n 1).

. In contrast, the findings made pursuant to a hearing on an article 710 motion are ordinarily binding at any retrials of the same case, and where an appellate court concludes that the record of the hearing reveals that evidence must be suppressed, the People are not entitled to a new hearing to try to sustain a theory which they could have, but failed to raise at the first trial (see, e.g., People v Wilkins, 65 NY2d 172, 180; cf. People v Havelka, 45 NY2d 636).