■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES MCARTHUR BROOKS, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Chetta, J.), rendered July 9, 1985, convicting him of manslaughter in the first degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The defendant stands convicted of manslaughter in the first degree as a result of an incident which occurred on September 22, 1984. On that date, the defendant became embroiled in an altercation with the victim, Carlton Mack, concerning the defendant's alleged involvement in the robbery of a relative of

the victim. The defendant eventually shot Mack, who later died as a consequence of the shotgun wounds he sustained. At the trial, the defendant interposed the defense of justification, claiming that he had fired the weapon after the victim chased him, beat him with a pistol and threatened to kill him.

Although the testimony of three defense witnesses tended to support the justification defense, the witnesses called by the prosecution effectively undermined this defense by indicating in their testimony that the victim was not in possession of a weapon and that he had been in the process of retreating from the defendant when the latter approached his automobile, retrieved a shotgun and fired the fatal shots.

The principal issue which divides this court on appeal is whether certain statements made by the victim of the crime to a nurse who had attended him at the hospital following the shooting—statements which corroborated the testimony of the prosecution witnesses regarding the question of justification—were properly admitted under the excited utterance exception to the prohibition against receipt of hearsay evidence. We answer this question in the affirmative.

At a hearing conducted outside of the presence of the jury, pertaining to the specific issue of whether the victim's statements did, in fact, constitute excited utterances, Nurse Carol Kostulias testified that she had initially encountered the victim in the emergency room of the hospital at approximately 2:30 P.M. on September 22, 1984. She noted that he appeared to be in shock and had no discernible blood pressure. An oxygen mask as well as intravenous tubing had been utilized by the medical staff in an effort to stabilize the victim. At approximately 4:00 P.M., Mack, who, until that time, had been lapsing in and out of consciousness, regained some degree of lucidity and informed Nurse Kostulias that he had been involved in a fistfight with an individual who had previously robbed his uncle. Mack further declared that in the aftermath of the fight, his opponent approached a car, retrieved a rifle from the trunk and shot him.

According to Nurse Kostulias, although Mack's condition had improved between 2:30 P.M. and 4:00 P.M., he was, nevertheless, in pain throughout this period of time. Furthermore, despite the fact that during his intermittent and brief intervals of consciousness, Mack had indicated an awareness that he was in a hospital and had, at one point, expressed a desire to sit up and leave, Nurse Kostulias' efforts, prior to the 4:00 P.M. statement, to converse with Mack in order to assess his

level of consciousness revealed that he was essentially unresponsive. Indeed, Nurse Kostulias specifically testified that at 4:00 P.M., when Mack finally explained the source of his injuries, it was the first time he was lucid enough to speak. Although the nurse indicated in her testimony that hospital physicians had apparently spoken with the victim prior to 4:00 P.M., she did not recall whether the incident was discussed. Nurse Kostulias, who was with the victim from the moment he was brought to the emergency room, additionally testified that immediately prior to 5:00 P.M., the victim's wife had attempted to converse with him; however, he was unable to respond to her inquiries.

Based on the foregoing testimony, we conclude that the trial court did not commit reversible error by admitting into evidence, as excited utterances, the statements made by Mr. Mack. It is evident from the information provided by Nurse Kostulias that the serious and ultimately fatal injuries suffered by Mr. Mack were of the type that could readily still his reflective faculties, prevent the opportunity for deliberation and hamper his ability to fabricate the circumstances surrounding his unfortunate encounter with the defendant *(see, People v Edwards,* 47 NY2d 493; *People v Flowers,* 128 AD2d 634, *lv denied* 69 NY2d 1003; *People v Brown,* 125 AD2d 320, *lv granted* 69 NY2d 877).

The testimony adduced at the hearing established that the victim was in shock when initially brought to the hospital and that he was unable to maintain a steady level of consciousness for a prolonged period of time thereafter. While he may have spoken with hospital physicians prior to the challenged statements, the substance of the conversation is unknown and there is no conclusive indication in the record that his comments at that time were rational or even coherent. The fact that Mr. Mack informed hospital employees that he felt well enough to leave the hospital while he was in the process of being prepared for surgery reinforces the conclusion that he lacked the facility to deliberate.

We therefore find that although the victim's declarations were not coincident in time with the startling event, they were, nevertheless, "uttered while [he] remained under the influence of a startling event, i.e., the shooting and resulting injuries, and not after a period of reflection or deliberation which might have led him to be untruthful" *(People v Vigilante,* 122 AD2d 900, 901, *lv denied* 68 NY2d 1005; *see also, People v Connors,* 121 AD2d 556, *lv denied* 68 NY2d 768). It is also significant, in this vein, that the statements which the

defendant now challenges merely confirmed that which had been attested to by several other prosecution witnesses.

In sum, since the declarations in question were made when the declarant was still under the stress of and wholly dominated by the overwhelming event which caused him to be hospitalized and later caused his death, these declarations were properly held to be admissible by the trial court and a reversal of the judgment of conviction is not warranted on this ground.

Equally unavailing is the defendant's contention that the sentence imposed was harsh and excessive.

We have reviewed the defendant's remaining contentions and find them to be without merit. Weinstein, Eiber and Kunzeman, JJ., concur.

Lawrence, J., dissents and votes to reverse the judgment of conviction and dismiss the indictment, without prejudice to the People to re-present any appropriate charges to another Grand Jury (see, People v Beslanovics, 57 NY2d 726), with the following memorandum, in which Mangano, J. P., concurs: On September 22, 1984, at approximately 2:00 P.M., the defendant and Carlton Mack were involved in an altercation in a parking lot which culminated with the defendant, armed with a shotgun, shooting Mack. Mack died eight days later.

While the defendant was indicted for murder in the second degree, he was convicted, after a jury trial, of the lesser included offense of manslaughter in the first degree.

There was a clear conflict among the witnesses as to what occurred during the altercation which preceded the fatal shooting of Mack. The defendant, interposing the defense of justification, testified that when he encountered Mack in the parking lot, Mack was armed and the defendant was not; that Mack proceeded to pistol-whip him and threaten to kill him; and that he managed to crawl to his car, grab a shotgun and fire at Mack, as Mack pursued him with his pistol. Two defense witnesses testified that Mack had a gun and had threatened the defendant prior to the shooting, and another defense witness testified that he saw Mack pistol-whip the defendant. On the other hand, a prosecution witness testified that there was a fistfight that Mack won; that Mack was empty-handed and that he was backing away when the defendant went to his car, pulled out a shotgun and fired. Another prosecution witness testified that Mack was unarmed and was backing away when the defendant shot him.

In seeking to disprove the defense of justification, the People

called the nurse who had attended Mack in the emergency room following the shooting. Over defense counsel's objection, the nurse was permitted to testify to a conversation she had had with Mack. In response to her inquiry as to what had happened, Mack told her that he had been in a fistfight with another man; that he had won the fight; and that after the fight, the other man took a gun from his car and shot him.

While the defendant's other contentions raised on appeal are either unpreserved for appellate review or without merit, I find that it was reversible error for the trial court to have admitted into evidence Mack's hearsay statement concerning the circumstances of the incident.

Prior to the admission into evidence of Mack's statement, through the nurse's testimony, the court held a hearing outside the presence of the jury concerning whether the statement was admissible as an "excited utterance". The nurse stated that Mack, suffering from multiple gunshot wounds, was brought into the emergency room at about 2:30 P.M. At that time, Mack appeared to be in a state of shock and no blood pressure was discernible. However, Mack's condition improved between 2:30 P.M. and 4:00 P.M., during which time the doctors were taking care of Mack and speaking with him. While the nurse claimed that between 2:30 P.M. and 3:00 P.M., she probably did not have any conversation with Mack because "he wasn't able to respond well at that time", she conceded that at one point after Mack had been resuscitated, he stated that he felt well and that he wanted to sit up and leave.

It was between 4:00 P.M. and 4:30 P.M. that the nurse questioned Mack concerning what had happened at the crime scene and he gave the challenged statement. While the nurse answered affirmatively when asked whether Mack made the challenged statement "the first time he was lucid enough to speak", she conceded that the statement was not part of Mack's first conversation. He had had earlier conversations with the doctors. While the nurse could not recall the substance of those prior conversations, she clearly testified that he was able to respond prior to 4:00 P.M., and while "his consciousness or lethargy came and went", when he was awake, he knew where he was and he knew what was being done to him.

I find that the nurse's testimony indicated that Mack's challenged statement was not made "under the stress of excitement caused by an external event sufficient to still his reflective faculties, thereby preventing opportunity for deliber-

ation which might lead the declarant to be untruthful" *(People v Edwards,* 47 NY2d 493, 497). The evidence establishes that Mack clearly had the opportunity to reflect and contrive before making his challenged statement to the nurse. This case is distinguishable from *People v Brown* (125 AD2d 320, *lv granted* 69 NY2d 877), wherein this court held that the statement made by the victim 30 minutes after he had been shot was properly admitted as an excited utterance since "the declarant * * * was determined to be in critical condition, suffering from 'hemorrhagic shock' and severe pain and whose physical condition was rapidly deteriorating". In this case, the nurse's testimony indicated that despite the fact that Mack's condition was initially serious, he did improve and during time periods prior to the challenged statement, he was lucid, aware of his surroundings and apparently able to respond to questions. Moreover, Mack had reason not to tell the truth regarding the circumstances of the fight, in light of the testimony that he had been armed, and at the time he made the challenged statement he was clearly not then anticipating death as a result of his wounds.

Finally, "there is no occasion for consideration of any doctrine of harmless error" *(People v Crimmins,* 36 NY2d 230, 241), since the proof of the defendant's guilt, without reference to the error, was not overwhelming. As noted, the witnesses were sharply divided concerning the circumstances which precipitated the shooting.

Therefore, the judgment should be reversed and the indictment dismissed, and the People should be granted leave to represent any appropriate charges to another Grand Jury *(see, People v Nieves,* 67 NY2d 125, 136, *mot to amend remittitur denied* 67 NY2d 1028; *People v Beslanovics,* 57 NY2d 726, supra).*