RIVERA, J. (concurring).
Defendant Twanek Cummings appeals his conviction on the basis that the trial court erroneously admitted a 911 call under the excited utterance exception to the hearsay rule. The justification for this exception, while longstanding, warrants serious reconsideration.
"Excited utterances," statements "made contemporaneously or immediately after a startling event which affected or was observed by the declarant, and relate to the event," are an exception to federal and state evidentiary rules against hearsay (see People v. Nieves, 67 N.Y.2d 125, 135, 501 N.Y.S.2d 1, 492 N.E.2d 109 [1986] ; People v. Fratello, 92 N.Y.2d 565, 684 N.Y.S.2d 149, 706 N.E.2d 1173 [1998] ). "The essential element of the exception is that the declarant spoke while under the stress or influence ***214 of the excitement caused by the event, so that [their] reflective capacity was stilled" ( Nieves , 67 NY2d at 135, 501 N.Y.S.2d 1, 492 N.E.2d 109 ). The exception's rationale posits that when a "declarant is exposed to a startling or upsetting *885 **492 event that is sufficiently powerful to render [their] normal reflective processes inoperative" ( People v. Cantave, 21 N.Y.3d 374, 381, 971 N.Y.S.2d 237, 993 N.E.2d 1257 [2013] [internal quotation marks and citation omitted] ), the resulting statement could "not [be] the product of studied reflection and[/or] possible fabrication" ( People v. Johnson, 1 N.Y.3d 302, 306, 772 N.Y.S.2d 238, 804 N.E.2d 402 [2003] ). "The spontaneity of the declaration guarantees its trustworthiness and reliability" ( Cantave, 21 N.Y.3d at 381, 971 N.Y.S.2d 237, 993 N.E.2d 1257 ).
Legal scholars and jurists have questioned the continued vitality of this exception, in light of advances in psychology and neuroscience that demonstrate an individual's inability to accurately recall facts when experiencing trauma, and, in turn, to create falsehoods immediately. For example, the Seventh Circuit has stated that, "as with much of the folk psychology of evidence, it is difficult to take this rationale [that immediacy negates the likelihood of fabrication] entirely seriously, since people are entirely capable of spontaneous lies in emotional circumstances. Old and new studies agree that less than one second is required to fabricate a lie" ( Lust v. Sealy, Inc., 383 F.3d 580, 588 [7th Cir.2004] [internal quotation marks and citation omitted] ). Circuit Judge Posner has explained pointedly the weak foundation for this exception:
"The [Federal Rules of Evidence] Advisory Committee Notes provide an even less convincing justification for ... the 'excited utterance' rule. The proffered justification is 'simply that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication.' The two words I've italicized drain the attempted justification of any content. And even if a person is so excited by something that [they] lose[ ] the capacity for reflection (which doubtless does happen), how can there be any confidence that [their] unreflective utterance, provoked by excitement, is reliable? ...
"As pointed out in the passage that the majority opinion quotes from the McCormick treatise, 'The entire basis for the [excited utterance] exception may ... be questioned. While psychologists would ***215 probably concede that excitement minimizes the possibility of reflective self-interest influencing the declarant's statements, they have questioned whether this might be outweighed by the distorting effect of shock and excitement upon the declarant's observation and judgement.'
"The Advisory Committee Notes go on to say that while the excited utterance exception has been criticized, 'it finds support in cases without number.' I find that less than reassuring. Like the exception for present sense impressions, the exception for excited utterances rests on no firmer ground than judicial habit, in turn reflecting judicial incuriosity and reluctance to reconsider ancient dogmas" ( United States v. Boyce, 742 F.3d 792, 801-02 [7th Cir.2014] [Posner, J. concurring] [citations omitted]; see also Steven Baicker-McKee, The Excited Utterance Paradox, 41 Seattle U L Rev 111, 114 [2017] ["Psychological studies suggest that stressful events trigger the 'flight-or-flight' response, and that deceptive statements are not only possible, they can be a natural component.... A traumatic event dramatically increases cognitive load, leading to perception deficits and distortions. Thus, excited witness perceptions tend to be unreliable for many reasons"]; Melissa Hamilton, **493 The Reliability of Assault Victims' Immediate Accounts: Evidence from Trauma Studies, 26 Stan L & Pol'y Rev 269, 304 [2015] ["Evidence law's entrenchment in a precedential *886 schematic relying upon longstanding tradition as proving any rule's validity is unfortunate in light of advances in scientific knowledge concerning human cognitions, physiological functioning, psychological experiences, and purposeful actions"] ).
It appears that only tenuous support exists for the proposition that a declarant's event-concurrent statements should evade traditional evidentiary requirements, and thus for this judicially-created "excited utterance" exception. Science, fact, and common sense suggest that we should cabin, if not outright abandon, the exception. Certainly, "judicial habit, in turn reflecting judicial incuriosity and reluctance to reconsider ancient dogmas" ( Boyce, 742 F.3d at 802 [Posner, J. concurring] ) is no reason to guard this exception so tightly, especially ***216 in the face of criticism stemming from an informed understanding of human cognitive behavior.
Nevertheless, because defendant does not challenge the premise of the "excited utterance" exception, instead confining his analysis to traditional notions of existing hearsay rules, I am compelled to consider his appeal on those terms, rather than reverse on the basis that the exception should be rejected whole cloth. Thus, regarding the present claim as limited by defendant, and on constraint of our prior case law, I agree for the reasons set forth by the majority that the Appellate Division should be reversed.
Order reversed and a new trial ordered.
Chief Judge DiFiore and Judges Rivera, Stein, Fahey, Garcia and Feinman concur, Judge Rivera in a concurring opinion.